IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MOHAMMED A. SALL     :

            :

  v.         :  Civil Action No. DKC 10-2245

            :

JOSEPH V. BOUNASSISSI, II,
et al.          :

**MEMORANDUM OPINION**

In May 2010, Plaintiff Mohammed A. Sall sued certain lenders, a trustee, a servicer, and several attorneys involved in the refinancing and subsequent foreclosure of his home. Sall originally alleged violations of various consumer protection statutes and asserted a number of common law tort claims. Now, in the face of motions for judgment from all of the defendants, Sall has sought leave to amend his complaint to pare it to just two claims, both relating to the Truth in Lending Act ("TILA").

Thus, presently pending are (1) a motion for judgment on the pleadings (ECF No. 23) filed by Defendant Fremont Investment and Loan ("Fremont"); (2) a motion for summary judgment (ECF No. 29) filed by the remaining defendants; (3) and a motion for leave to amend (ECF No. 41) filed by Sall. The issues have been briefed and the court now rules, no hearing being deemed necessary. *See* Local Rule 105.6. For the reasons that follow,

Defendants' motions will be denied as moot, while Sall's motion will be granted in part and denied in part.

**I.    Background**

   **A.    Factual Background**

As framed in Sall's original complaint, this case concerned two principal events:  (1) Sall's decision to refinance the mortgage on his home in 2006 and (2) the subsequent default and foreclose of that home a few years later.

   **1.    Sall's 2006 Refinance**

The complaint explains that this case began in August 2006, when Sall went to Fremont to discuss refinancing his home. Fremont approved Sall for a 30-year mortgage with a 50-year amortization schedule.  Sall's initial monthly payments were set at roughly $2850.

Sall says Fremont misrepresented the nature of the loan the company gave him.  For one, Fremont purportedly told him that he had received a 30-year fixed rate mortgage.  In reality, the mortgage was a hybrid adjustable rate mortgage:  Sall would pay a fixed payment for the first two years, but then pay a variable rate of interest over the remaining term.

As part of its misrepresentation, Fremont allegedly misstated some required disclosures and entirely failed to make others.  Sall says, for instance, that he did not receive a copy

of his initial application.  Nor did he receive a copy of his settlement statement before closing.  Nor did he get a "CHARM" book – a handbook given to consumers who obtain an adjustable rate mortgage.  He also alleges that he was not given a copy of the appraisal report on his home or any information about his credit score.  And perhaps most importantly, Sall maintains that his Truth in Lending disclosure statement did not accurately disclose his payment schedule.

## 2.  Foreclosure

At some time not indicated in the complaint, Sall's lender initiated foreclosure proceedings against him.  The foreclosure action was filed by several members of the law firm of Buonassissi, Henning & Lash, P.C. (collectively, "the Buonassissi Defendants"),[1] who allegedly acted at the behest of Defendant Wells Fargo.[2]  The Buonassissi Defendants purportedly served as substitute trustees for Deutsche Bank National Trust

_____

[1]     In particular, the lawyers involved in this case are Joseph V. Buonassissi, II; Richard Henning, Jr.; Richard A. Lash; Keith M. Yacko; Brian S. McNair; James J. Inabinett, Jr.; and David A. Rosen.

[2]     The body of Sall's complaint merely refers to "Wells Fargo," but the caption includes three defendants related to Wells Fargo:  Wells Fargo & Company; Wells Fargo Bank, N.A.; and Wells Fargo Home Mortgage.

Company ("Deutsche Bank"), who Fremont appointed as trustee for Sall's loan.

For various reasons, Sall contends that neither the Buonassissi Defendants nor Wells Fargo had standing to pursue the foreclosure action. According to Sall, the lawyers cannot act as substitute trustees because (a) "[a] corporation can only bring suit through an attorney, not through an officer or appointed agent," and (b) the attorneys "have no standing . . . because they are neither owners nor holders in due course of the note." (ECF No. 3 ¶¶ 10, 11). As for Wells Fargo, Sall insists the bank does not have any right to enforce his note because "there is no evidence . . . showing how Wells Fargo obtained legal possession of the note." (*Id.* ¶ 12).

The original complaint also indicates that a foreclosure sale was held on January 22, 2010.

### B. Procedural Background

Sall filed his first complaint in the Circuit Court for Prince George's County on May 6, 2010. The complaint contains eleven counts under federal and state law brought against at least eleven defendants: Fremont; America's Servicing Company ("ASC") (a supposed successor-in-interest to Fremont); the Buonassissi Defendants; Wells Fargo; and Deutsche Bank. It seeks damages (including punitive damages of $5 million),

several declaratory judgments, and various forms of injunctive relief - including an order rescinding the foreclosure sale.

On August 16, 2010, Wells Fargo and Deutsche Bank removed the complaint to this court with the consent of all of the other defendants. (ECF Nos. 1, 2, 18). After Defendants filed answers in the fall of 2010 (ECF Nos. 15, 19), the court entered a scheduling order. (ECF No. 20). All of the defendants subsequently moved for judgment in their favor. First, on November 30, 2010, Fremont filed for a motion for judgment on the pleadings. (ECF No. 23). Then, on March 7, 2011, the remaining Defendants moved for summary judgment. (ECF No. 29).

For several months, these potentially dispositive motions sat unanswered – even though Sall was represented by counsel. In April 2011, the court learned that Sall's counsel had left his prior firm and could not be located. Before his disappearance, counsel did not move to withdraw from the case or otherwise provide any indication that he was no longer counsel of record. In light of the unique circumstances created by the constructive withdrawal of Sall's counsel, the court notified Sall that he would receive 21 additional days to answer the pending motions. (ECF No. 30). New counsel for Sall then entered the case and requested additional time to respond to the motions. (ECF No. 33). The court granted him that extension

and one additional extension a few weeks later. (ECF Nos. 34, 36).

Finally, on June 7, 2011, new counsel for Sall filed two oppositions. (ECF Nos. 39, 40). The day before, Sall's new counsel also filed a motion for leave to amend the complaint. (ECF No. 37). The proposed amended complaint trims the number of defendants to four (Wells Fargo, Fremont, ASC, and Deutsche Bank) and the number of claims to two (both relating to TILA). (ECF No. 37-2). It also focuses solely on Defendants' purported failure to make proper disclosures and appropriately respond to a rescission notice, while excising the "standing" arguments related to the foreclosure. (*Id.*). All Defendants oppose this amendment. (ECF Nos. 42, 43). Sall has not filed a reply.

## II. Leave to Amend

Sall wishes to amend his complaint more than a year after he first filed it. He lacks written consent to amend from Defendants, and Defendants filed their answers several months ago. Thus, Sall needs leave of court to file his proposed amended complaint.

The parties focus most of their attention on Federal Rule of Civil Procedure 15(a)(2). That rule provides that the court should "freely give leave" to amend "when justice so requires."

Defendants suggest that, despite this liberal standard, Sall's proposed amendment should be denied as futile.

Both parties, however, overlook an important complication: the scheduling order in this case set a deadline of November 8, 2010 for the amendment of pleadings; that deadline has long since passed. (ECF No. 20, at 2). In consequence, Sall must do more than satisfy Rule 15(a)'s liberal standard; he must *first* meet the mandates of Rule 16(b)(4), which calls for "good cause" to change a scheduling order. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008); *see also Wilson v. Appalachian Power Co.*, No. 3:10-0445, 2011 WL 221656, at *1 (S.D.W.Va. Jan. 24, 2011) (applying two-step test employing Rules 16(b) and 15(a) in analyzing untimely motion for leave to amend); *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373 (D.Md. 2002) (same).

### 1. Rule 16(b): The "Good Cause" Standard

Rule 16(b) focuses on the proposed amendment's timeliness and the reasons behind its tardy submission. *Rassoull*, 209 F.R.D. at 374. In particular, Rule 16(b) requires the movant to show that he acted diligently. The court also considers whether the non-moving party could be prejudiced by the delay, the length of the delay, and whether the movant acted in good faith.

*Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 768-69
(D.Md. 2010).

The parties offer no discussion of "good cause," but a
review of the record suggests it may be appropriately found
here. Sall's original counsel filed nothing in this case once
it was removed. Instead, he entirely failed to respond to
communications from the court and ignored the pending motions
that could end Sall's case. Because communications from this
court were directed to original counsel, it is not even clear
that Sall received word that his case was progressing and faced
dismissal. As soon as the court wrote him directly, he took
diligent steps to advance his case. He promptly obtained new
counsel. That counsel entered an appearance and properly moved
for extensions of time. Now, as promised, he has in fact filed
an amended complaint.

Of course, the ordinary rule is that simple carelessness,
inadvertence, or attorney error does not amount to good cause
justifying a modification of the scheduling order.[3] Nor does the
entry of new counsel, standing alone, justify a finding of good

---

[3]     *See, e.g.*, *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d
152, 155 (1st Cir. 2004); *Graham v. Progressive Direct Ins. Co.*,
271 F.R.D. 112, 121 (W.D.Pa. 2010); *Mann v. Fernandez*, 615
F.Supp.2d 1277, 1285 (D.N.M. 2009).

cause.[4]  These related concepts are based on the same underlying idea:  "a party voluntarily chooses his attorney as his representative in the action, and, thus, he cannot later avoid the consequences of the acts or omissions of this freely selected agent."  *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 (4th Cir. 2010) (quotation marks omitted).  Yet that fundamental principle must also be balanced against "this circuit's general preference that a blameless party not be disadvantaged by the procedural errors or neglect of her attorney."  *Harris v. U.S. R.R. Ret. Bd.*, 198 F.3d 139, 141 (4th Cir. 1999).  And where an attorney entirely abandons his client, that presents a different situation than a mere mistake or a strategic misjudgment.  In the exceptional circumstance where an attorney completely abdicates his responsibilities, good cause can be found.  *See, e.g.*, *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 674 (C.D.Cal. 2003); (explaining that good cause could be found if a party's "lawyers were guilty of gross negligence or abandonment"); *cf. Cunningham v. New Jersey*, 230 F.R.D. 391, 394 (D.N.J. 2005) (holding, in

---

[4]    *See, e.g.*, *Buchanan Cnty., Va. v. Blankenship*, 545 F.Supp.2d 553, 555 n.2 (W.D.Va. 2008); *Johns v. AutoNation USA Corp.*, 246 F.R.D. 608, 610 (D.Ariz. 2006); *Marcin Eng'g, LLC v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516, 521 (D.Colo. 2003).

9

service of process context, that good cause was shown where counsel "abandoned his representation").  This is especially so where, as here, a client acts with apparent diligence once his counsel's abandonment becomes clear.

Other considerations relevant to the good cause inquiry also imply it exists here.  There is no hint of bad faith.  The delay is not prohibitively long.  Nor have Defendants suggested that they will suffer any prejudice from Sall's delay in seeking to amend.  Prejudice is unlikely in a circumstance such as this one, where the chief aim of the amendment is to strike several claims and some defendants.  *See McCoy v. Erie Ins. Co.*, 204 F.R.D. 80, 82 (S.D.W.Va. 2001) (explaining that deletion of claims is not as problematic under Rule 16(b), as the rule is "practically" intended to prevent a party from "decimating" a scheduling order with "late attempts to complicate or change the nature of the case").  In addition, the new allegations presented would not "require much, if any, additional discovery."  *Safeway, Inc. v. Sugarloaf P'ship, LLC*, 423 F.Supp.2d 531, 539 (D.Md. 2006).

In sum, there is good cause for Sall's implicit request to modify the scheduling order.

**B.    Rule 15(a): Prejudice, Bad Faith, and Futility**

Having established good cause, Sall must also meet the requirements of Rule 15(a), which explains that leave should be "freely given."  The principle that a court should freely give leave does not require the court to give it in every circumstance.  The court obviously "retain[s] the power to ensure that pleadings perform their proper function of framing the issues and facilitating the fair conduct of litigation." *Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011) ("[A] district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse to grant the leave without any justifying reason.").  A court should exercise this power and deny leave when (1) the proposed amendment would prejudice the opposing party, (2) the movant has acted in bad faith, or (3) the proposed amendment would be futile.  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

As noted, Defendants do not argue that Sall's decision to drop his original claims would prejudice them.  They do not point to any indication of bad faith, and the court can discern none on its own.  And futility is obviously not a relevant consideration when claims are being dropped.  Accordingly, there

is no reason to deny Sall leave to amend his complaint to drop counts three through eleven and certain defendants (*i.e.*, the Buonassissi Defendants, Wells Fargo & Company, and Wells Fargo Bank, N.A.).  That part of Sall's motion will be granted.

Defendants do argue, however, that the remaining, reshaped claims contained within the proposed amendment are futile.  An amendment is futile if it would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *accord Cuffee v. Verizon Commc'ns, Inc.*, 755 F.Supp.2d 672, 677 (D.Md. 2010). Consequently, leave to amend should be denied if the well-pleaded facts underlying the proposed new claims do not amount to a "showing" that the plaintiff is entitled to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (explaining that a "showing" is more than the "mere possibility of misconduct"). In the same way, if the amended pleading contains facts sufficient to rule on an affirmative defense, the court may consider that defense on a motion for leave to amend.  *See Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009) (explaining that a statute of limitations defense may sometimes be considered on a motion to dismiss).

The amended complaint contains two counts.  In one count, Sall seeks a declaratory judgment related to a notice of rescission he mailed to one of the defendants.  In the other count, Sall seeks damages stemming from Defendants' allegedly wrongful denial of his TILA-based claim for rescission.  The court addresses each count in turn.

## 1. Declaratory Judgment and the Validity of the Rescission

One count of Sall's complaint is styled as a request for "declaratory judgment."  The count, however, actually contains elements of both declaratory and injunctive relief.  In particular, Sall alleges that, spurred by certain TILA violations committed by Defendants, he "timely exercised his right to rescind" on July 22, 2009.  (ECF No. 41-2 ¶ 28).  He purportedly exercised this right by sending a letter to ASC. (*Id.*).  Among other things, he now asks for a declaration that his rescission was "timely and lawful," a declaration that the foreclosure proceedings were null and void, and an order to Defendants to release the lien on his home.  (*Id.* at 10).

Sall's claim rests on the notion that the lien on his home "instantly became void" when he sent that letter (*id.* ¶ 36), but that notion is incorrect.  TILA does create a limited rescission remedy.  When rescission is validly initiated, "the creditor terminates its security interest and returns any payments made

by the debtor in exchange for the debtor's return of all funds or property received from the creditor (usually, the loan proceeds)." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008). When a lender receives a valid request for rescission, the lender should initiate a winding up of its security interest within 20 days. 15 U.S.C. § 1635(b). The goal of this process is to restore the parties to the "status quo ante." *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007).

A borrower may rescind in two principal situations. For one, a borrower may rescind anytime within three days of the loan closing. *See* 15 U.S.C. § 1635(a). More importantly (at least in this case), a borrower may also rescind if the lender fails to provide the borrower with certain required disclosures. If that happens, the borrower may rescind the transaction anytime within three days of the time when the disclosures are finally made. *Id.* In most cases, the right to rescind is finally extinguished after three years.[5] *See* 15 U.S.C. § 1635(f).

The borrower initiates the rescission process by sending a notice to his lender, 15 U.S.C. § 1635(b), but "unilateral

---

[5]   There are limited exceptions to this three-year bar, but they are not relevant here.

notification of cancellation does not automatically void the loan contract." *Shelton*, 486 F.3d at 821; *accord Ray v. Citifinancial, Inc.*, 228 F.Supp.2d 664, 667 (D.Md. 2002) ("Within the meaning of [TILA], 'rescission' does not mean an annulment that is definitively accomplished by unilateral pronouncement."). Were that the case, borrowers could reduce their lenders to unsecured creditor status by asserting even baseless TILA violations. *Shelton*, 486 F.3d at 821. Instead, the security interest is voided only when the lender "acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined." *Id.* (quotation marks omitted). Absent one of those two events, "the right of rescission lies dormant." *DeCosta v. U.S. Bancorp*, No. DKC 10-0301, 2010 WL 3824224, at *5 (D.Md. Sept. 27, 2010).

Thus, the court cannot declare, as Sall requests, that the lien on his home was voided and that the foreclosure proceeding was a nullity at the moment Sall sent his notice. But Sall's claim is not futile, as Defendants apparently suggest, merely because his position is mistaken. Sall has presented an appropriate request to determine the rights of the parties. The fact that Sall will ultimately be unsuccessful is irrelevant:

> Where a bill of complaint shows a subject matter that is within the contemplation of the relief afforded by the declaratory decree statute, and it states sufficient

15

> facts to show the existence of the subject
> matter and the dispute with reference
> thereto, upon which the court may exercise
> its declaratory power, it is immaterial that
> the ultimate ruling may be unfavorable to
> the plaintiff. The test of the sufficiency
> of the bill is not whether it shows that the
> plaintiff is entitled to the declaration of
> rights or interest in accordance with his
> theory, but whether he is entitled to a
> declaration at all; so, even though the
> plaintiff may be on the losing side of the
> dispute, if he states the existence of a
> controversy which should be settled, he
> states a cause of suit for a declaratory
> decree.

*Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, No. DKC 09-0100, 2011 WL 856374, at *18 (D.Md. Mar. 9, 2011) (quotation marks omitted); *see also, e.g.*, 22A Am.Jur.2d *Declaratory Judgments* § 232 (2011 supp.) (explaining in analogous context of motion to dismiss a declaratory judgment that it is irrelevant "whether the plaintiff is entitled to a favorable declaration" and that motions to dismiss are not permitted "simply because the plaintiff may not be able to prevail"). Sall will be granted leave to amend his complaint to pursue a declaratory judgment action against the four defendants named in his amended complaint, should he still wish to pursue one despite the likely unfavorable outcome. He should file an amended complaint reflecting any such claim within 21 days.

It would appear, however, that Sall's request for a "declaratory judgment" also contains elements of injunctive

relief. If Sall's request for a declaratory judgment is actually an attempt to rescind his mortgage through *this* action, then he is simply too late. As this court explained just last year in *DeCosta*, an action for rescission is untimely when it is brought more than three years after consummation of the transaction, even if the borrower mails the lender a notice of rescission within the three-year period. 2010 WL 3824224, at *5. This is so because, again, the notice only expresses a claimed entitlement to right of rescission; it does not actually *exercise* the right. *Id.* Moreover, if timely notice were enough, borrowers would be able to cloud title on their home for years to come merely by mailing a letter. *Id.* And, practically speaking, letters of notice – unlike lawsuits – are sometimes lost. Finding such notice sufficient would "introduce[] a lacuna between the expiration of the right to rescind and the time in which the lender might learn of a purportedly timely Rescission that it does not recall receiving, with foreclosure (and perhaps even subsequent sale) falling within that temporal no-man's-land." *Rosenfield v. HSBC Bank, USA*, No. 10-cv-00085-MSK-MEH, 2010 WL 3489926, at *5 (D.Colo. Aug. 31, 2010).

What is more, filing a notice within the three-year period is not enough because § 1635(f) is a statute of *repose*, not a statute of *limitations*. *Jones v. Saxon Mortg., Inc.*, 537 F.3d

320, 326-27 (4th Cir. 1998) (explaining that § 1635(f) is an "absolute time limit"); *see also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Statutes of repose bar lawsuits initiated after the end of the period of repose in every circumstance, as the statute extinguishes the substantive right – not merely the right's enforcement and remedy. *Tidewater Fin. Co. v. Williams*, 341 B.R. 530, 538 n.9 (D.Md. 2006). An extinguished right obviously cannot support a suit. *See Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir. 1987) ("Statutes of repose make the filing of suit within a specified time a substantive part of plaintiff's cause of action. In other words, where a statute of repose has been enacted, the time for filing suit is engrafted onto a substantive right created by law." (citations omitted)); *accord Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1300 n.7 (4th Cir. 1993); *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 866 (4th Cir. 1989); *see also Black's Law Dictionary* (9th ed. 2009) (defining "statute of repose" as "a statue barring any suit that is brought after a specified time"). The notion that a borrower could keep a lifeless right alive indefinitely merely by filing even a groundless rescission notice is offensive to the very idea of a statute of repose. *See, e.g., Williams v. Wells Fargo Home Mortg., Inc.*, 410 F.App'x 495, 499 (3<sup>d</sup> Cir. 2011) ("Mere

18

invocation without more . . . will not preserve the right beyond the three-year period.  Rather, consistent with § 1635(f), a legal action to enforce the right must be filed within the three-year period or the right will be completely extinguished." (quotation marks and brackets omitted)).

Thus, any claim for rescission is now untimely.  Sall indicates that he closed on this loan at some point in August 2006.  His right to rescind expired in August 2009.  He did not file suit until May 2010, almost four years later.  As a result, his suit is well past the three-year period of repose for rescission under TILA.  The fact that he filed a notice with his lender does not change these basic facts.[6]

### 2.    Statutory Damages for Wrongful Refusal to Rescind

Sall also seeks damages for Defendants' allegedly wrongful denial of his request for rescission.  Defendants argue that any claim for damages is barred by TILA's one-year statute of limitations period.  They further argue that Sall cannot collect

_____

[6]    As if that were not enough, TILA also provides that a borrower's right to rescission "shall expire . . . upon the sale of the property."  15 U.S.C. § 1635(f).  Sall's home was sold in a January 2010 foreclosure sale, apparently barring relief in a second sense.  The Fourth Circuit has also cautioned that "to permit tolling under § 1635(f) to allow a party to rescind after a foreclosure sale would be unwise."  *Jones*, 537 F.3d at 327.

damages for wrongful rescission because "Sall has no right to rescission." (ECF No. 42, at 5).

TILA does indeed contain a one-year statute of limitations for damage awards. Specifically, any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Defendants seize on this provision and argue that Sall's claims must be barred, as the closing occurred in August 2006.

Yet Sall's claims are not premised on anything happening in August 2006. Rather, he seeks damages related to his July 2009 attempt at rescission. Such a claim is separate and distinct from any now time-barred claims associated with disclosures at the time of closing. *See* 15 U.S.C. § 1640(a) (providing for damages when a creditor fails to comply with § 1635); *see also Staley v. Americorp Credit Corp.*, 164 F.Supp.2d 578, 584 (D.Md. 2001); *Abel v. Knickerbocker Realty Co.*, 846 F.Supp. 445, 449-50 (D.Md. 1994) (awarding damages for lender's failure to honor request for rescission, where borrower established that she made valid rescission request). Because Sall sued within a year of his rescission notice (and its subsequent denial), his claim for damages is timely.[7] *See, e.g., Belini v. Wash. Mut. Bank, FA*,

---

[7]     This assumes, of course, that the amendment concerning the wrongful refusal to rescind relates back to the filing of

20

412 F.3d 17, 25-26 (1st Cir. 2005) (holding that, where borrower premises damages claim on wrongful refusal to rescind, one-year limitations period begins either on date of rescission notice or 20 days later).[8]

Defendants also argue that they cannot face damages stemming from Sall's July 2009 request for rescission, as Sall has no present right to rescind. They rely upon a series of cases holding that "a borrower has no TILA claim for failing to rescind after notice, if there is no right to rescind." (ECF No. 42, at 5). In each of those cases, however, the borrower had no right to rescind *at the time he sent the notice*. *See, e.g.*, *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002) (borrower notified bank after expiration of three-year statute of repose); *Rodenhurst v. Bank of Am.*, --- F.Supp.2d ----, No. 10-00167 LEK-BMK, 2011 WL 768674, at *8

---

original complaint. *See* Fed.R.Civ.P. 15(c)(2). "One circumstance rendering [an] amendment futile is when the statute of limitations has run and the amendment would not relate back under Rule 15(c)." *Barnes v. Prince George's Cnty., Md.*, 214 F.R.D. 379, 380 (D.Md. 2003). Because Defendants did not discuss this issue, it is not considered here.

[8]     The idea that a borrower may collect from a lender for his wrongful refusal to rescind does *not* conflict with the Fourth Circuit's position that rescission does not automatically occur upon notice. "[R]escission is not automatic when a notice of rescission is sent, but a creditor can still be held liable for wrongfully refusing to rescind when asked to do so by a debtor." *Belini*, 412 F.3d at 25 n.3.

(D.Haw. Feb. 23, 2011) (same); *Caminero v. Wells Fargo Bank, N.A.*, No. 1:07cv800, 2008 WL 640264, at *6 (E.D.Va. Mar. 5, 2008) (same).[9]  Thus, those cases merely stand for the common sense proposition that a borrower may not collect damages for a lender's refusal to respect a notice claiming a right already extinguished at the time notice is given.  In this case, however, Sall still (allegedly) possessed a right to rescind at the time he sent his notice to the lenders.  Consequently, even though that right has now been extinguished, he may still pursue a damages action for the lenders' refusal to respond appropriately to what was – at least at that point – an allegedly valid request for rescission.

Yet Sall may not proceed with his claim for damages against all Defendants.  The amended complaint indicates that Sall sent his notice to only ASC.  In the context of rescission, TILA imposes requirements to act only upon those creditors in "receipt of a notice of rescission."  15 U.S.C. § 1635(b).

_____

[9]     The last case cited by Fremont, *Nix v. Option One Mortg. Corp.*, No. 05-03685, 2006 WL 166451, at *6 (D.N.J. Jan. 16, 2006), supports Sall's position on the damages issue.  In that case, the borrower filed a notice of rescission within the repose period.  Much like this case, he then waited too long to file suit, rendering his claim for rescission untimely.  Nevertheless, the court *separately* analyzed the timeliness of the borrower's separate claim for damages stemming from lender's refusal to rescind, rather than relying on the fact that the statute of repose for rescission had expired.

Hence, Sall's claim for damages is futile as to all Defendants save ASC.

Consequently, Sall will also be granted leave to amend his complaint to state a claim for damages, but against only ASC. He should file an amended complaint reflecting this claim within 21 days.

**III. Remaining Motions**

As noted, all Defendants filed motions seeking judgment in their favor. Defendants directed their motions at the prior, superseded complaint. The motions are now moot and will be denied.

**IV. Conclusion**

For the foregoing reasons, the motion for leave to amend will be granted in part and denied in part. Defendants' motions will be denied as moot. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
