IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MOHAMMED A. SALL                   :

                                      :

    v.                       :   Civil Action No. DKC 10-2245

                                      :

WELLS FARGO BANK, N.A., et al.    :

                                      :

**MEMORANDUM OPINION**

Presently pending and ready for review in this Truth in Lending Act ("TILA") case is the renewed motion for sanctions and motion for summary judgment filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), individually and doing business as America's Servicing Company ("ASC"), and Deutsche Bank National Trust Company ("Deutsche Bank"). (ECF No. 78). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion for summary judgment will be granted, and the renewed motion for sanctions will be denied as moot.

## I. Background

### A. Factual Background

Except as specifically noted, the following facts are not in dispute. In August 2006, Plaintiff Mohammed A. Sall refinanced his home located at 3609 Mahnaz Court, Upper Marlboro, Maryland, through an adjustable rate mortgage loan originated by Fremont Investment and Loan ("Fremont"). Sall

asserts, without explanation, that "[t]he closing documents were
not provided by" Fremont.  (ECF No. 81, at 1).  ASC, however,
submits a number of exhibits indicating that, at closing on
August 18, 2006, Sall acknowledged receipt of:  (1) a copy of
the Truth-In-Lending Disclosure Statement ("the TILDS") (ECF No.
78-7); (2) a copy of the Adjustable Rate Mortgage Loan Program
Disclosure (ECF No. 78-8); (3) a copy of the Consumer Handbook
on Adjustable Rate Mortgages ("the CHARM booklet") (*id.*); (4) a
copy of the HUD-1 Settlement Statement (ECF No. 78-9);  and (5)
two copies of the Notice of Right to Cancel (ECF No. 78-9).[1]  The

---

[1] The exhibits attached to Defendants' motion are not
accompanied by any affidavit authenticating them as business
records.  Until recently, this oversight may have precluded
consideration of the documents at this stage.  *See, e.g.*, *Orsi
v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("[U]nsworn,
unauthenticated documents cannot be considered on a motion for
summary judgment.").  The 2010 amendments to Fed.R.Civ.P.
56(c)(2), however, "'eliminated the unequivocal requirement that
documents submitted in support of a summary judgment motion must
be authenticated.'"  *Brown v. Siemens Healthcare Diagnostics,
Inc.*, No. 11-0769, 2012 WL 3136457, at *6 (D.Md. July 31, 2012)
(quoting *Akers v. Beal Bank*, 845 F.Supp.2d 238, 243 (D.D.C.
2012)).  Instead of "a clear, bright-line rule ('all documents
must be authenticated')," Rule 56(c)(2) now prescribes a "multi-
step process by which a proponent may submit evidence, subject
to objection by the opponent and an opportunity for the
proponent to either authenticate the document or propose a
method to doing so at trial."  *Foreword Magazine, Inc. v.
OverDrive, Inc.*, No. 10-cv-1144, 2011 WL 5169384, at *2 (W.D.
Mich. Oct. 31, 2011).  Importantly, "the objection [now]
contemplated by the amended Rule is not that the material 'has
not' been submitted in admissible form, but that it 'cannot'
be."  *Ridgell v. Astrue*, No. DKC 10-3280, 2012 WL 707008, at *9
(D.Md. Mar. 2, 2012) (quoting *Foreword Magazine,* 2011 WL
5169384, at *2)).  Here, Plaintiff does not raise an objection

TILDS sets forth the applicable annual percentage rate (10.467%), the finance charge ($1,310,242.79), the amount financed ($412,604.04), and the total of payments ($1,722.846.83). (ECF No. 78-7). The TILDS also includes a payment schedule for Sall's mortgage loan, listing 24 payments of $2,849.65; 335 payments of $3,814.88; and 1 payment of $376,470.43. (ECF No. 78-7). The TILDS further states that "[t]his Loan has a Variable Rate Feature" and that "Variable Rate Disclosures have been provided to you earlier." (*Id.*). In signing the TILDS, Sall "acknowledge[d] reading and receiving a complete copy of this disclosure." (*Id.*).

On February 10, 2009, an order to docket foreclosure of the Mahnaz Court property was filed in the Circuit Court for Prince George's County, Maryland. (ECF No. 78-16, at 2). On July 22, 2009, Sall sent a letter to ASC, the servicer of his loan, that purports to exercise his right to rescind the mortgage pursuant to TILA because the "disclosure statement provided . . . at closing was defective in a number of ways." (ECF No. 78-14). On the same date, Sall sent a second letter to ASC that also

---

that Defendants *cannot* provide authenticated versions of their exhibits. He does not, for example, contend that the signatures and initials on the closing documents are not his. (*See generally* ECF No. 81). Under revised Rule 56(c)(2), Defendants are not required to authenticate the documents (or explain how they would do so at trial) absent such an objection. Accordingly, the exhibits can properly be considered.

purports to exercise his "3-year right of rescission under [TILA]" because "the originating lender violated this act and other federal and state statute[s]." (ECF No. 78-15).[2]

On August 4, 2009, ASC responded to Sall by: (1) acknowledging receipt of his "Notice of Rescission"; (2) informing him that "[Wells Fargo], doing business as [ASC] is the servicer of the loan"; and (3) explaining that because ASC "did not underwrite, close or fund" Sall's mortgage loan, it was "unable to substantiate" his allegations of TILA violations but instead would have to "confer[] with the owner of the loan regarding [Plaintiff's] demand for rescission." (ECF No. 78-14, at 1). On August 14, 2009, ASC sent a second letter to Sall informing him that, after "conferr[ing] with the responsible parties," "[his] demand for rescission has been denied" and that "ASC considers this matter closed." (ECF No. 78-15, at 1).

On March 23, 2011, the Circuit Court ratified the foreclosure sale of the Mahnaz Court property. (ECF No. 78-16, at 3). On April 14, 2011, Sall filed a notice of appeal in the foreclosure proceedings (*id.*), which was dismissed by the Maryland Court of Special Appeals on June 5, 2012 (ECF No. 78-17, at 1).

---

[2] As Defendants note, Sall apparently did not sign the second letter dated July 22, 2009. (*See* ECF No. 78-15).

4

## B.   Procedural Background

On May 6, 2010, Sall filed the instant suit against Fremont, Wells Fargo, ASC, Deutsche Bank, and members of the law firm of Buonassissi, Henning & Lash, P.C., in the Circuit Court for Prince George's County, Maryland.   (ECF No. 2).   After removal to this court, all Defendants answered the eleven-count complaint and then moved for judgment in their favor in one form or another.   In response, Sall – *via* new counsel – moved for leave to amend his complaint to include just two counts under TILA, one for statutory damages and one for declaratory relief. (ECF No. 41).

By memorandum opinion and order issued on July 13, 2011, leave to amend was granted with two caveats.   (ECF Nos. 44, 45). First, Sall's declaratory judgment count against the four remaining defendants (Wells Fargo, Fremont, ASC, and Deutsche Bank) could proceed, except to the extent it sought injunctive relief in the form of rescission of the mortgage.   (ECF No. 44, at 16-19).[3]   Second, his damages claim for wrongful refusal to rescind could proceed only against ASC.   (*Id.* at 21-22).

---

[3] The court concluded that any claim for rescission would be time-barred by TILA's three-year statute of repose.   (*See* ECF No. 44, at 13-19).   Specifically, the court held that Sall's July 2009 letters – which were sent less than three years after closing – only served as notice of a claimed entitlement to rescind but did not actually serve to *exercise* any extended right of rescission that Sall may have had.   (*Id.*).   Earlier

On August 3, 2011, Sall moved for leave to file a second amended complaint (which was construed as a motion for reconsideration), again asking that his claim for statutory damages be allowed to proceed against Wells Fargo and Deutsche Bank in addition to ASC. (ECF No. 46). On August 29, 2011, Sall voluntarily dismissed Fremont from the suit, without prejudice. (ECF Nos. 49, 50). On October 12, 2011, Sall's counsel filed a motion for leave to withdraw his appearance. (ECF No. 58). Pursuant to a memorandum opinion and order issued on November 28, 2011, Sall's request to add Deutsche Bank and Wells Fargo as defendants to Count I of the second amended complaint was denied, and leave to withdraw as counsel was granted to Sall's attorney. (ECF Nos. 60, 61).

Since that time, Sall has proceeded *pro se*. After the entry of a new scheduling order (ECF No. 64), the remaining Defendants (Wells Fargo, Deutsche Bank, and ASC) began seeking discovery from Sall. When their requests went unanswered, Defendants moved to compel and for sanctions on March 7, 2012.

---

this year, the Fourth Circuit clarified that "a borrower exercises her right of rescission [under TILA] by merely communicating in writing to her creditor her intention to rescind." *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 277 (4th Cir. 2012). *Gilbert* does not affect the outcome of today's ruling, however, because, as set forth below in Section II.B.2, Sall does not offer any evidence that his right to rescind extended beyond the normal three-day period provided for by TILA.

(ECF No. 65).   In a memorandum opinion and order issued on March 30, 2012, Sall was directed to schedule and appear for his deposition and to serve his Fed.R.Civ.P. 26(a)(1) disclosures, his answers to Defendants' interrogatories, and his responses to Defendants' requests for production of documents.  (ECF No. 67). Although Sall appeared for his deposition and served interrogatory answers, Defendants renewed their motion for sanctions on May 17, 2012, arguing that Plaintiff did not fully comply with the court's order.   (ECF No. 70).   Defendants' motion was denied without prejudice to renewal, but Sall was ordered to:  "(1) name all persons who have information about his claims, (2) provide the details of that information, (3) specify the damages or other relief he seeks, and (4) produce all documents he intends to rely on to prove his claim."  (ECF No. 74, at 3).  Sall also was specifically warned that his complaint would be subject to dismissal if he did not comply within fourteen days. (*Id.*).

On July 25, 2012, Defendants filed a motion renewing their request for sanctions and asking for dismissal of Sall's second amended complaint because Plaintiff apparently still has not provided any of the information required by the court's order. (ECF No. 78).  Defendants alternatively seek summary judgment. Because Sall is proceeding *pro se*, the clerk transmitted a letter to him on July 26 advising him of his right to respond to

7

this potentially dispositive motion within seventeen days and warning that his failure to do so could result in dismissal. (ECF No. 79).  Sall filed a two-page opposition (ECF No. 81), and Defendants replied (ECF No. 82).

## II.  Motion for Summary Judgment

### A.  Standard of Review

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).   At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

Although *pro se* litigants are to be given some latitude, the above standards apply to everyone.  Even a *pro se* party may not avoid summary judgment by relying on bald assertions and speculative arguments.

### B.   Analysis

Defendants seek summary judgment on the two counts asserted in Plaintiff's second amended complaint, both of which allege violations of TILA, 15 U.S.C. § 1601 *et seq.*, and it implementing regulation, Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. § 226.1 *et seq*.  The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).   To that end, TILA requires specific disclosures by lenders when extending credit to consumers.

Under TILA, a borrower may generally rescind his or her loan anytime within three days of the transaction's closing.  15 U.S.C. § 1635(a).  If, however, the lender fails to provide the borrower with the required disclosures, then the borrower may

rescind the transaction anytime within three days after he or she actually receives the disclosures. *Id.* If the disclosures are never made, the right to rescind does not extend indefinitely, as TILA includes a three-year statute of repose. That statute provides, in relevant part:

> An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor[.]

15 U.S.C. § 1635(f); *see also Jones v. Saxon Mortg., Inc.*, 537 F.3d 320, 324 (4th Cir. 1998) ("If the required notice or material disclosures are not delivered, then § 1635(f) provides a [three-year] time limit for the exercise of the right [to rescind].").

## 1.   Count 1: Wrongful Refusal to Rescind

In Count I of the second amended complaint, Sall seeks damages under TILA for ASC's purported wrongful denial of his notice of rescission, which he contends was timely under TILA. (ECF No. 62, at 5-10).  ASC asserts, among other arguments, that it is entitled to judgment as a matter of law on this claim because it cannot be held liable under TILA as a servicer.  (ECF No. 78, at 16).  ASC's position is availing.

Generally, a servicer of a mortgage loan that is not an assignee or owner of the loan "has no liability for alleged violations of TILA." *Davis v. Wilmington Fin., Inc.*, No. PJM 09-1505, 2010 WL 1375363, at *4 (D.Md. Mar. 26, 2010) (citing 15 U.S.C. § 1641(f); *Chow v. Aegis Mortg. Co.*, 286 F.Supp.2d 956, 959 (N.D.Ill. 2003)). Moreover, a servicer is not treated as an owner under TILA merely on the "basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation." 15 U.S.C. § 1641(f)(2).

Here, Sall alleges in the second amended complaint that ASC is both (1) a "successor-in-interest to Fremont" that "assumed liability for Fremont's mortgage loans, including the Plaintiff's mortgage loan" and (2) the "servicer of Plaintiff's underlying loan." (ECF No. 62 ¶ 5). Yet, as recognized in the memorandum opinion issued on November 28, 2011, ASC's August 2009 responses to Sall's notice of rescission "make clear that ASC was only the servicer of the loan and that another entity was the lender." (ECF No. 60, at 8). Plaintiff offers no evidence in his opposition to establish that ASC ever "assumed liability" for his mortgage loan from Fremont, nor does an independent review of the record yield any support for this allegation. In fact, in his motion for leave to file a second amended complaint, Plaintiff effectively conceded the limited

nature of ASC's role by arguing that Wells Fargo, doing business as ASC, "acted strictly as servicing agent for and on behalf of its undisclosed principal," Deutsche Bank.  (ECF No. 46, at 2).

Sall thus has not presented a genuine dispute of material fact for trial as no reasonable jury could conclude that ASC had any ownership interest in Sall's loan.  Because a non-owner servicer cannot be held liable for damages under TILA, ASC therefore is entitled to summary judgment on Count I of Plaintiff's second amended complaint.

**2.   Count 2: Declaratory Judgment**

To obtain any of the declaratory relief Plaintiff seeks in Count II of the second amended complaint, Sall would have to establish, as a foundational matter, that he had an extended right to rescind the mortgage because Fremont violated TILA.[4] Defendants contend that Sall's right to rescind did not extend past the normal three-day cancellation period because (1) Fremont provided all of the material disclosures required by

---

[4]   Among other things, Sall seeks in Count II (1) a declaration that his attempt to rescind the mortgage loan was "timely and lawful" based on Fremont's failure to provide the material disclosures required by TILA; (2) a declaration that his notice of rescission was effective as to Deutsche Bank as well as ASC; (3) a declaration that both the lien on his property and the foreclosure proceedings became "immediately" null and void upon sending the letters to ASC on July 22, 2009; and (4) an order directing Defendants to release the lien on his home.  (ECF No. 62, at 10-13).

TILA, as evidenced by Sall's signature acknowledging receipt of the required materials; and (2) nothing in the TILDS provided to Plaintiff was misleading or deficient. (ECF No. 78, at 13-16). Sall's two-page opposition asserts, without any explanation or support, that (1) his case is "similar in nature" to the issues presented in *In re Sousa*, Bankr. No. 06-11398-JMD, 2011 WL 917853 (Bankr.D.N.H. Mar. 14, 2011); (2) "[t]he closing documents were not provided by the loan originator as claimed" by Defendants; and (3) he "did not acknowledge receipt of documents that were signed at closing." (ECF No. 81, at 1-2).

As Defendants note in their reply (ECF No. 82), other than attaching a copy of the *Sousa* decision and what appears to be a press release that is unrelated to this case,[5] Sall does not even attempt to offer any competent evidence to support that Fremont violated TILA in connection with his mortgage loan. His bare-bones opposition does not identify *which* documents allegedly

_____

[5] Sall attaches a document to his opposition titled "Wells Fargo Home Mortgage Agrees to Settlement of Fraud Charges," which apparently is a press release from the New Jersey Division of Consumer Affairs detailing a settlement with Wells Fargo in connection with "Pick-a-Payment" loans offered by the company. (ECF No. 81-1). Liberally construing his opposition, Sall contends that this press release is evidence of a trend of "fraudulent documents that were perpetrated in foreclosure proceedings." (ECF No. 81, at 1-2). Sall does not, however, give any sort of explanation of how the press release supports his allegations that Fremont violated TILA during the refinancing of the Mahnaz Court property.

"were not provided" by Fremont at closing.   What is more, under TILA, a borrower's written acknowledgement of receipt of disclosure documents "create[s] a rebuttable presumption of delivery."   15 U.S.C. § 1635(c).   Thus, at a minimum, the documents Defendants attach to their motion give rise to rebuttable presumption that Sall received:   (1) a copy of the TILDS (ECF No. 78-7); (2) a copy of the Adjustable Rate Mortgage Loan Program Disclosure (ECF No. 78-8); (3) a copy of the CHARM booklet (*id.*); (4) a copy of the HUD-1 Settlement Statement (ECF No. 78-9); and (5) two copies of the Notice of Right to Cancel (ECF No. 78-9).[6]   All Sall offers in rebuttal is an unsupported and unsworn assertion that Fremont never provided "the closing documents."   (ECF No. 81, at 1).   Without more, this denial is clearly insufficient to rebut the presumption of delivery.   *See, e.g.*, *Hendricksen v. Countrywide Home Loans*, No. 3:09-CV-00082, 2010 WL 2553589, at *5 (W.D.Va. June 24, 2010) (plaintiffs' "bald assertion" of non-delivery, which was "unsubstantiated by any evidence or documentation," did not rebut presumption established by written acknowledgment of receipt); *cf. Sousa*,

---

[6] Because Sall fails to rebut the presumption of delivery created by operation of 15 U.S.C. § 1635(c), Defendants' argument regarding the applicability of 15 U.S.C. § 1641(b) – which provides that written acknowledgement of receipt by a borrower is *conclusive* proof of delivery in certain TILA actions against assignees – need not be reached.

2011 WL 917853, at *7 (presumption of delivery rebutted only through sworn, credible, and specific trial testimony by borrowers).

Nor does Sall attempt to support his allegation that Fremont violated TILA by providing a "misleading" TILDS that indicated that "Plaintiff's payment would be locked in at $3,814.88 for 335 months after the first" adjustment to his interest rate when, in reality, his payment "would fluctuate every six months based on the LIBOR Index." (ECF No. 62, at 1-2).[7]  Because a party opposing a Fed.R.Civ.P. 56 motion "may not rest upon the mere allegations or denials of [his] pleadings," *Bouchat*, 346 F.3d at 522, summary judgment in Defendants' favor on Count II is warranted on that basis alone.

In any event, an examination of the TILDS pursuant to the guidance offered by TILA's implementing regulation belies the allegations in Sall's second amended complaint.  The commentary to Regulation Z states that, for variable-rate transactions, "[c]reditors should base the disclosures only on the initial rate and should not assume that this rate will increase."  12

---

[7] Confusingly, Sall states in his opposition that the TILDS "was inaccurate regarding the existence of a pre-payment penalty and contained a false acknowledgement by the loan originator" (ECF No. 81, at 1) — two assertions that are not raised in his second amended complaint (*see* ECF No. 62).  Upon examination, this passage appears to be an unattributed direct quote from the *Sousa* opinion.  *In re Sousa*, 2011 WL 917853, at *7.

C.F.R. § 226.17(c)(1), Commentary ¶ 8. Hence, "any payment schedule that showed estimated changes in payments over time would run afoul of Reg[ulation] Z." *Pezza v. Wells Fargo Bank, N.A.*, No. 09-2097, 2011 WL 3847248, at *4 (D.N.J. Aug. 30, 2011) (rejecting plaintiffs' argument that the TILDS for their adjustable-rate mortgage was misleading "because it list[ed] 360 monthly payments at $2,855.18, and does not show that the payment could change if the interest rate varied"). Moreover, as Defendants point out, the TILDS signed by Sall clearly states, directly below the payment schedule, that "[t]his loan has a Variable Rate Feature" and that "Variable Rate Disclosures have been provided to you earlier." (ECF No. 78-7). Thus, "[e]ven assuming . . . that an ordinary consumer could be misled by looking at the payment schedule in isolation, it is clear that no ordinary consumer would be misled when looking at the [TILDS] as a whole." *Pezza*, 2011 WL 3847248, at *4.

In sum, even when construed in the light most favorable to Sall, no reasonable jury could conclude that Fremont violated TILA based on the present record.[8] Absent a TILA violation, Plaintiff cannot establish that his right to rescind extended beyond the typical three-day timeframe and therefore cannot

---

[8] Because Sall offers no evidence of *any* TILA violation by Fremont, Defendants' argument that assignees can be held liable only for violations that are "evident on the face of the document" (ECF No. 78-1, at 15) need not be reached.

receive any of the declaratory relief he seeks. Accordingly, judgment will be entered in favor of Defendants as to Count II of the second amended complaint, accompanied by a corresponding declaration.

## III. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendants Wells Fargo Bank, N.A., individually and doing business as America's Servicing Company, and Deutsche Bank National Trust Company will be granted. Because judgment will be entered in favor of Defendants as to both of Plaintiff's remaining counts, Defendants' renewed motion for sanctions pursuant to Fed.R.Civ.P. 37 – including their requests for dismissal of Sall's second amended complaint and for an award of attorneys' fees incurred in preparing their motion – will be denied as moot. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
